**MARIGOLD FOODS, INC., Appellant,**

v.

**Earl L. BUTZ, Secretary of Agriculture, Appellee.**

**No. 73–1311.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 19, 1973.

Decided March 13, 1974.

Sydney Berde, St. Paul, Minn., for appellant.

Victor W. Palmer, U. S. Dept. of Agriculture, Washington, D. C., for appellee.

Before HEANEY, ROSS and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

The sole issue on this appeal is whether the Grade A skim milk used by the

appellant, Marigold, in the "Dairyland" marketing area[1] to produce "Party Dip," was properly classified by the Market Administrator as Class I under Order No. 61, 7 C.F.R., Part 1061 (1969). The Judicial Officer of the Department of Agriculture, acting for the Secretary of Agriculture,[2] sustained the Administrator's classification. The District Court, in an unpublished opinion, held that "a plain reading of the regulations supports the Administrator's determination," and granted the Secretary's motion for summary judgment. Marigold appeals. We affirm.

Order No. 61 became effective on April 1, 1969. The order classifies milk as follows:

(a) *Class I milk.* Class I milk shall be all skim milk and butterfat:

(1) Disposed of as a fluid milk product except as provided in subparagraphs (2), (3), and (4) of paragraph (b);

(2) An inventory of fluid milk products in packaged form on hand at the end of the month; and

(3) Not accounted for as Class II milk;

(b) *Class II milk.* Class II milk shall be all skim milk and butterfat:

(1) Used to produce butter, butteroil, anhydrous milkfat, plain or sweetened condensed milk or skim milk, and condensed buttermilk; nonfat dry milk, dry whole milk, dried buttermilk, dried whey, and blends of dried milk products including dry ice cream mix; cheese and cheese foods; ice cream, ice milk and frozen desserts including mixes for freezing; sterile products in hermetically sealed metal or glass containers;

\*　\*　\*　\*　\*　\*

(3) Disposed of in bulk in the form of a fluid milk product to any commercial food processing establishment

1. The marketing area lies in southeastern Minnesota and northern Iowa.

2. *See,* Brown v. United States, 367 F.2d 907, 911 (10th Cir. 1966), cert. denied, 387 U.S. 917, 87 S.Ct. 2028, 18 L.Ed.2d 969 (1967).

where food products are prepared only for consumption off the premises;

(4) Dumped or disposed of for animal feed;

(5) In inventory of bulk fluid milk products on hand at the end of the month;

7 C.F.R. § 1061.41 (1969).

It defines the term "fluid milk product" as follows:

> "Fluid milk product" means milk, cream, skim milk, buttermilk, unsterilized concentrated milk or skim milk, eggnog and eggnog flavored milk, and mixtures combining milk, skim milk, and/or cream, including the aforesaid products sweet, sour, cultured, or acidified and such products reconsituted from or fortified with milk products. The term includes the aforesaid products to which the flavors, sweeteners, stabilizers, emulsifiers, vitamins, minerals, and similar ingredients have been added. The term does not include products which are sterilized and disposed of in hermetically sealed metal or glass containers.

7 C.F.R. § 1061.7 (1969).

The Administrator determined that the Grade A skim milk used in "Party Dip" should be classified as Class I milk for two reasons: First, § 1061.41(a)(1) and (2) provides that skim milk disposed of or retained in inventory as a fluid milk product, shall be classified as Class I milk. "Party Dip" was a fluid milk product within the meaning of § 1061.7 as it contained eighty to eighty-two percent of Grade A skim milk to which flavors, sweeteners, stabilizers, emulsifiers, vitamins, minerals and similar ingredients had been added. Second,

§ 1061.41(a)(3) provides that skim milk not accounted for as Class II milk should be classified as Class I milk. Because it was not used to produce butter, ice cream or one of the other products listed in the Class II category [§ 1061.-41(b)(1)], it had to be accounted for as Class I milk.[3]

Marigold vigorously contests the Administrator's interpretation. It argues, in substance, that the Secretary did not intend to include filled milk products such as "Party Dip" in Class I; that the skim milk lost its character as a fluid milk product when eighteen percent vegetable fat was added to it; and that it was inequitable to continue to classify the skim milk used in "Party Dip" as Class I after a new order, the "Memphis Order," classified skim milk used to produce filled milk as Class II milk in most other marketing areas in the United States.[4]

■ At the outset, we note that the Administrator's decision is entitled to great weight. He is an expert making a decision on a matter where expertise is important. Our review will, therefore, be limited to a determination of whether the ruling is warranted by the record and has a rational basis at law.

There is no clear indication of an intent by the Secretary to exclude "Party Dip" from a Class I classification in Order No. 61. He simply stated:

> Producers proposed that filled milk also be a fluid milk product. This issue is reserved for a later decision.

> Official notice is taken of the fact that a hearing held at Memphis, Tenn., in February, April, and May 1968 (33 F.R. 2785) dealt with the

---

3. With respect to milk marketing orders generally, *see* H. P. Hood & Sons v. United States, 307 U.S. 588, 59 S.Ct. 1019, 83 L.Ed. 1478 (1939); United States v. Rock Royal Co-operative, Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939); Bailey Farm Dairy Co. v. Anderson, 157 F.2d 87 (8th Cir.), cert. denied, 329 U.S. 788, 67 S.Ct. 355, 91 L.Ed. 675 (1946).

4. The Memphis order defined "filled milk" as:
   * * * any combination of nonmilk fat (or oil) with skim milk * * * with or without milkfat, so that the product (including stabilizers, emulsifiers, or flavoring) resembles milk or any other fluid milk product; and contains less than six percent nonmilk fat (or oil).
   7 C.F.R. § 1097.19 (1969).

disposition or potential disposition in all Federal order markets of filled milk and certain other products containing milk or milk derivatives which are disposed of in fluid form. Evidence was received as to the need for a coordinated program of regulation of such products in all Federal order markets. No decision based on the Memphis hearing has been issued.

The treatment of filled milk under the Southeastern Minnesota-Northern Iowa order should be coordinated with the results of the Memphis hearing. Since the outcome of that hearing has not yet been determined, no action is taken herein on the filled milk issue. 34 Fed.Reg. 3816 (1969).

The notice of hearing described the term "filled milk" as:

> * * * any milk, cream, or skimmed milk, whether or not condensed, evaporated, concentrated, powdered, dried, or desiccated, to which has been added, or which has been blended or compounded with, any fat or oil other than milk fat, so that the resulting product is in imitation or semblance of milk, cream, or skimmed milk * * *.

33 Fed.Reg. 2786 (1968).

The most we can read into the above is that the Secretary was aware of the problems, that he did not want to anticipate the results of the Memphis hearing which was then pending and decided to avoid the issue by classifying all milk not specifically included in Class II as Class I milk. While he could have followed the reverse procedure, he was not required to do so.

There is nothing in the record to support Marigold's argument that the addition of vegetable fat causes the skim milk to lose its character as a fluid milk product. Order No. 61 and the United States Public Health Service's recommended Grade A Pasteurized Milk Ordinance, from which Marigold asserts the definition in Order No. 61 was obtained, simply state that the term "fluid milk product" includes skim milk to which flavors, sweeteners, etc., have been added. Neither specifically excluded filled milk products from the definition. We further note that the drafters of the order and ordinances stated specifically that the term "milk product" is not intended to include a number of other products, thus making it clear that both knew how to write exclusionary language if they were of a mind to.

The Administrator's interpretation may have put Marigold to a competitive disadvantage on the product "Party Dip" between the date the Memphis order was issued and the date Order No. 61 was amended to in effect classify the skim milk used in "Party Dip" as Class II milk. But this fact alone is insufficient to upset the Administrator's determination.

We repeat, the order[5] clearly states that all skim milk not accounted for as Class II milk shall be classified as Class I milk and this milk could not be accounted for as Class II milk. It was not used to produce butter, condensed milk, ice cream, frozen desserts, or any of the other products set forth in § 1061.-41(b)(1). It, therefore, had to be included in Class I.

Affirmed.

5. A number of other milk orders have similar provisions, see, e. g., 7 C.F.R. § 1006.41 (1972); 7 C.F.R. § 1007.41 (1970); 7 C.F.R. § 1012.41 (1972).